# Debski v. USS (a/k/a U.S. Steel Corp.)

C.P. of Allegheny County, no. GD 93-16521.

*Michael L. Rosenfield*, for plaintiff.
*Ronald J. Fisher*, for defendants.

ROSS, *J.*, March 13, 1997 — David Debski, plaintiff, a Caucasian male, filed this civil rights action for money damages and declaratory and injunctive relief against the defendants, USS, a/k/a United States Steel Corporation, a division of USX Corporation, and USX, alleging violations of the Pennsylvania Human Relations Act of October 27, 1955, P.L. 744, §5, §12, 43 P.S. §955 and §962(c)(1). He complained of his termination on October 16, 1991, as a salaried employee of defendants and alleged that defendants failed to accommodate his alcoholism disability and treated him less favorably than an African-American co-worker, Robert Jackson.

The disability claim was abandoned so that trial proceeded only on the racial discrimination issue.

All administrative prerequisites have been fulfilled. Plaintiff failed to prevail therein. There was first a grievance procedure and an arbitration hearing under the Basic Labor Agreement between USS, a division of USX, and plaintiff's union, Local 4090, United Steelworkers of America, decided April 20, 1992. (Exhibits D-10, D-11.) Thereafter, the Human Relations Commission on June 29, 1993, dismissed plaintiff's complaint for failure to show probable cause for a finding of discrimination. (Exhibit D-16.) The instant complaint followed.

## FACTS

The following facts are found from the record of the de novo hearing before this court.

### (1) *Plaintiff's Work History*

USX, a Delaware corporation headquartered in Pittsburgh, hired plaintiff, who had 29 years of prior experience in the area of oxygen generation, to work as an assistant air separation plant operator in the air separation plant at the Edgar Thomson Works, Braddock, Pennsylvania. Debski was competent and skilled in his field. However, on his employment application of April 14, 1987, plaintiff represented that he did not consume alcohol (exhibit D-4) when in fact at that time he drank two ounces of whiskey and two beers a day. Had the company known of the misrepresentation, it might have discharged plaintiff.

The Edgar Thomson Works, which manufactures and processes steel every hour of every week, employs c.1,000 persons of which c.100 are management and c.900 are union workers (c.840 wage earners, c.600 salaried). The air separation plant produced 99.5 percent pure oxygen which assists combustion in the steel-making furnaces of Edgar Thomson. Oxygen does not burn or explode but will support combustion or explosion if combustible or explosive substances are close at hand. (Exhibits D-3, D-26.) The magnitude of the combustion or explosion will vary with the factual circumstances existing at the time but may range from trivial to extremely dangerous to persons or property.

While employed at the air separation plant, plaintiff worked with a plant operator, like himself a non-management union worker. On the 4 p.m. and 12 a.m. shifts, they had no management supervision. During most of

his employment, except for a short period after December 12, 1989, plaintiff consumed alcohol on a daily basis.

On December 12, 1989, plaintiff reported to work at 11:30 p.m. while intoxicated. Without provocation or warning, he, for a significant period of time, continuously assaulted co-worker William Luptak, despite the efforts of Luptak to escape and the efforts of intervening co-workers, Ali Abdullah and Larry Kuracz, to stop the fray. Plaintiff repeatedly threw Luptak against the control room instrumentation panel and tackled him to the floor as Luptak attempted to escape out the door. The arrival of state police and plant security ended the assault. Luptak was taken for treatment to Braddock General Hospital and missed work thereafter.

Luptak, although six feet two inches tall, weighed only 142-145 lbs., while plaintiff at six feet tall weighed 200 lbs. at the time of the incident.

Plaintiff denied upon questioning by his supervisor, Douglas Matthews, that he was intoxicated, although he was incoherent, smelled of alcohol and had even been seen doing readings in a closed area of the plant. Matthews, acting reasonably, sent plaintiff to the hospital for a blood alcohol test, but plaintiff refused and returned to the plant. Matthews directed him to travel home in a taxi. Mr. Debski instead drove his automobile home.

On grounds of plaintiff's reporting to work while intoxicated and of his fighting or attempting bodily injury to a co-worker (violations of plant rules, section II 9, 10), plaintiff, on December 12, 1989, was given two five-day suspensions subject to discharge by his supervisor, Douglas Matthews. After mandatory grievance hearings under section 8-B of the basic labor agreement, the suspension on December 15, 1990, was converted to discharge. (Exhibit D-8.) Plaintiff, on

December 20, 1990, appealed the decision to the board of arbitration of defendants and the union. (Exhibit D-8.)

Had racial discrimination been an issue, plaintiff had the right to complain under the union contract to the joint committee on civil rights. Plaintiff made no such complaint.

Grievances might also be resolved by a last chance agreement, the terms of which would be negotiated on a case-by-case basis by the union, the employer and the employee. These obviate a decision by the arbitrators.

From December 27, 1989, until January 24, 1990, plaintiff voluntarily attended a 28-day inpatient alcoholism rehabilitation program. On March 15, 1990, he returned to work after signing a last-chance agreement. He was not entitled to work during the pendency of the grievance procedure despite the terms of a memorandum of understanding on justice and dignity on the job which affords suspended/discharged workers the right to work prior to adjudication. (Exhibit D-2.) Justice and dignity does not apply to workers suspended or discharged for fighting or reporting unfit for work by reason of intoxication.

The last-chance agreement, inter alia, required plaintiff to remain alcohol-free and placed upon his disciplinary record two concurrent five-day suspensions. Under the union contract, during a period of five years following the agreement, plaintiff's conduct could be considered in any later disciplinary proceeding. Under the agreement, any subsequent consumption of alcohol would be grounds for discipline including discharge. Despite this provision, several co-workers knew that Mr. Debski thereafter reported to work with alcohol on his breath.

On October 11, 1991, plaintiff's wife of 32 years told him she was divorcing him. He imbibed alcohol before reporting to work at 3:30 p.m. At 4:10 p.m. his supervisor, Daniel Parlak, found him asleep at a computer in the separation plant control room building and, upon awakening him, detected the smell of alcohol on the breath of the plaintiff whose speech was slurred. Mr. Parlak directed plant security to accompany plaintiff to the plant dispensary where two breathalyzer tests indicated his blood alcohol levels were .165 percent and .176 percent, well above the levels of presumptive intoxication of .10 percent.

Plaintiff, on October 11, 1991, had violated the last-chance agreement by reporting to work while intoxicated. He was sent home and given a five-day suspension subject to discharge.

Safety is a primary concern at the air separation plant. Its power substation receives 138,000 volts of electricity. It has a cylindrical tank containing 530,000 gallons of high purity liquid oxygen, reversing heat exchanges, 7,000 horsepower air compressors and 3,000 horsepower oxygen compressors. While at work, Debski was required to monitor and handle intricate equipment, sometimes at great heights and often next to pure oxygen, tasks which require strict adherence to safety rules. The violation of safety rules presented a risk of injury both to plaintiff and others.

After Mr. Parlak discussed the incident with Samuel Henderson and Robert Eckbrethe, managerial employee, it was decided to terminate plaintiff for violating the last-chance agreement. On October 16, 1997, plaintiff was discharged for the stated reason of failing to follow plant safety rules. (Exhibit D-13.)

Plaintiff filed a grievance under the basic labor agreement. Upon denial of his grievance, he presented his

case at an arbitration hearing. (Exhibit D-15.) He never alleged that he was the victim of racial discrimination. The arbitrators ruled on April 20, 1992, that termination was for just cause since plaintiff had violated the last-chance agreement which gave him a second chance after engaging in a fight with a fellow employee while unfit for work. (Exhibit D-15.)

## (2) *The Work History of Robert Jackson*

Robert Jackson was cited by Mr. Debski as an exemplar of unfair racial discrimination against the white plaintiff. Robert Jackson, an African-American hourly employee of defendants since January 1973, works as a utility operator at Edgar Thomson. He belongs to Local 1219 of the United Steelworkers Union, a different union from plaintiff's Local 1090, and is covered by a different contract. Under this contract, the company may consider only those disciplinary actions relating to Jackson which have occurred in the prior five years. In 1989 and until November 21, 1990, Jackson was disciplined many times for tardiness or absenteeism or sleeping on the job. (Exhibits P-37, P-38, P-38-A, P-39, P-41, P-42, P-46.)

Jackson received four last-chance agreements, the first in 1977 for sleeping on the job. (Exhibits P-22, P-23.) He violated the second agreement entered into in 1990 as a result of absenteeism and was discharged. (Exhibits P-45, P-45-A, P-43-B, P-43-C, P-43-D, P-44, P-45, P-46.) He filed a grievance. After its denial, he was reinstated on May 11, 1992. On April 30, 1996, after major heart surgery in early 1996, he was suspended and later discharged for cashing an original and replacement paycheck for the same pay period. The replacement check for the February pay was received in early March. The original February check

was received in April. Jackson cashed the latter, mistakenly believing it was a check for profit sharing.

Jackson filed a grievance to which defendant failed to respond. Before the arbitration board could decide the case, the parties entered into a last-chance agreement.

Although once an alcohol abuser, Jackson has not consumed alcohol since 1974 after he underwent rehabilitation. He used street drugs from April until November 1990, but underwent voluntary rehabilitation in December 1990, and never consumed drugs thereafter. He was never reported or observed to be working under the influence of drugs or alcohol, nor has he ever exhibited violence toward any co-worker, nor has he been disciplined for fighting. The gravamen of his offenses has been tardiness, absenteeism, sleeping on the job or, in the last situation, mistakenly cashing a duplicate check. While Jackson has been disciplined on more occasions than Debski, Jackson's offenses were not in the category of violence or being unfit to perform his job.

It is true that Mr. Jackson violated a last-chance agreement but was returned to work anyway. His offenses again never involved violence or unfitness to perform his job. The company could consider his long work record of 20 years and lack of any charges of unfitness for work or violence and make a distinction between him and Mr. Debski, with a four-year work record and one highly violent incident and two of unfitness for work. Debski never could have returned to work pending grievance procedure. Jackson could work pending grievance under justice and dignity.

The distinction between Debski and Jackson was not racial. It was the degree and severity of their offenses.

### (3) *Damages*

The court has found no factual basis for finding that plaintiff was the victim of racial discrimination. It will, however, find the facts as to damages relevant in the event this adjudication is set aside.

Plaintiff has worked since his discharge from defendant at his family's close corporation, Vermont Towers Inc., as resident manager and custodian. For this he was paid $15,500 in 1992, $17,000 in 1993, $17,500 in 1994, $20,000 plus health insurance coverage of $3,500 annually in 1995, 1996 and 1997, a total of $97,000 in wages and benefits. He has made only one attempt to secure employment and that in December 1996.

Had plaintiff not been discharged in October 1991, he would have earned to date, $117,000 in wages plus fringe benefits of $22,230.

### (4) *Post-Discharge Conduct of Plaintiff*

The court has considered actions of plaintiff and defendants up until the time of plaintiff's discharge in October 1991. The firing was based upon violation of a last-chance agreement which conditionally gave plaintiff an opportunity for forgiveness for past assaultive behavior and intoxication or unfitness to perform his job. Post-discharge arrests of plaintiff for public intoxication on May 13, 1993 (to which he pled guilty) and for physical assault (while plaintiff was intoxicated) on January 12, 1996 (for which he was found guilty of harassment) point to the failure of plaintiff over many years to remedy assaultive or intoxicated conduct for which he was discharged. Therefore, any relief by way of reinstatement is foreclosed. Plaintiff has failed to deal with his conduct in such a way that the court

might find him suitable for reemployment by defendants.

## THE LAW APPLIED TO THE FACTS

Under the pertinent Pennsylvania Human Relations Act of October 27, 1955, *supra*, §5, §12, 43 P.S. §951 and §962(c)(1), jurisdiction over this case is given to this court. Defendant is an employer as the term is defined in the statute. Under section 5 of the statute, 43 P.S. §955(a):

"It shall be an unlawful discriminatory practice . . . (a) For any employer because of the race . . . of any individual . . . to discharge from employment . . . or to otherwise discriminate against such . . . individual with respect to . . . terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required."

The court in cases of racial discrimination under the statute must look to the legal standard utilized under title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e which is that plaintiff must prove by the preponderance of evidence that he was discharged because he was white: *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746-47 n.1 (1993). Debski, who is white, is entitled to the same statutory protection that he would enjoy were he nonwhite: *McDonald v. Santa Fe Trail Trans. Co.*, 427 U.S. 273, 280, 96 S.Ct. 2574, 2579 (1976).

### (1) *The Prima Facie Case*

In order to prevail in this case, plaintiff must initially prove by a preponderance of the evidence a prima facie case of discrimination raised by proof of four elements. First, he must prove that he was a member of a protected

class. This he has done. Second, plaintiff must prove by an objective standard that he was qualified for the position from which he was terminated: *St. Mary's Honor Center v. Hicks, supra,* 509 U.S. at 506, 113 S.Ct. at 2747; *Gray v. York Newspapers Inc.,* 957 F.2d 1070, 1078 (C.A. 3 1992).

Plaintiff has failed to meet the second crucial element of proof. During most of his employment at defendants' air separation plant, he drank daily. The plant poses a daily risk of harm to employees, company property and even to the community if safety regulations cannot be adhered to. Since his discharge, he has continued to drink on such a scale that he twice was arrested and convicted of crimes stemming from alcoholic derelictions, one of which involved a factual situation of assault although the conviction was for harassment.

It cannot be said that plaintiff can fulfill the obligation of working closely with other employees. He lacks the essential qualifications to work safely in a complex plant where adherence to safety regulations is of prime importance.

Under *St. Mary's Honor Center v. Hicks, supra* at 506, 113 S.Ct. at. 2747, plaintiff must prove his discharge as the third element of his case. This he has done. The fourth element to be proved is that other persons similarly situated, not belonging to this protected class were retained or treated more favorably.

Out of some 900 fellow employees at Edgar Thomson, plaintiff offers us one exemplar, Robert Jackson. If a plaintiff asks the court to infer discrimination from an employer's treatment of comparable cases, then a "goodly sample" must be presented. Discrimination cannot be found on a thin basis: *Kuhn v. Ball State University,* 78 F.3d 330, 332 (C.A. 7 1996).

But even if one sample is enough, the situations must be similar and comparable: *Lieberman v. Grant*, 630 F.2d 60, 70 (C.A. 2 1980); *McClain v. Mack Trucks Inc.*, 532 F. Supp. 486, 489 (E.D. Pa. 1982).

Jackson and Debski are apples and oranges. Jackson was guilty of sleeping on the job, absenteeism and tardiness and mistaken cashing of two paychecks for the same pay period. There is no safety threat here. He never assaulted a co-worker and never was found to have reported to work intoxicated or under the influence of drugs. Jackson belonged to a different bargaining unit and worked under a different collective bargaining agreement. He had worked 20 years at the plant and amassed a bank of goodwill over the years. Length of service is a distinguishing characteristic: *Benson v. Department of the Navy*, no. 95-0127, 91-8030, 1996 U.S. Dist. WL 397474, at *7 (E.D. Pa. July 10, 1996).

Plaintiff was disciplined for a lengthy, brutal assault, while intoxicated, on a co-worker and for being unfit for work in a safety-sensitive plant by reason of intoxication on the job. He failed to remedy his assaultive behavior and alcoholism since termination. He was only employed 4.5 years at defendants' plant.

Thus, he has not proved that in any way he and Jackson were similarly situated even though Jackson was never terminated. The exemplar situation is neither similar nor comparable, nor was there any showing that African-American employees who committed offenses similar to plaintiff were treated differently: *Riddick-Battle v. Department of the Navy*, no. 95-7488, 1996 U.S. Dist. WL 502241 at *4 (E.D. Pa. August 28, 1996).

Thus, plaintiff has not raised a prima facie case of discrimination on the basis of race.

## (2) *No Legitimate, Non-Pretextual, Nondiscriminatory Reason for Discharge*

Assuming that plaintiff has raised a prima facie case of racial discrimination, has the defendant set forth a legitimate, nondiscriminatory reason for discharge? Defendants point to the termination based upon plaintiff's violation of his last-chance agreement by reporting to work in a highly intoxicated condition. Neither fact, viz. the violation of the agreement or the high state of intoxication, is disputed. It is not refuted also that the board of arbitration, composed of representatives of the company and of the union, found just cause for terminating plaintiff, strong corroboration of a non-discriminatory discharge: *Becton v. Detroit Terminal of Consolidated Freightways,* 687 F.2d 140, 142 (C.A. 6 1982), *cert. denied,* 460 U.S. 1040 (1983). In addition there was ample testimony in the record to support a conclusion that, exclusive of plaintiff's earlier assaultive behavior, his reporting to work intoxicated posed a serious threat to the safety of himself, of his co-workers, of the community and of the property of the company and of the community.

Thus, defendants met their burden of proof of non-discriminatory reasons for plaintiff's discharge. The burden then shifts back to plaintiff to prove by a preponderance of the evidence that the articulated reasons were a false pretext and that race was the real reason for termination: *St. Mary's Honor Center v. Hicks, supra* at 508, 113 S.Ct. at 2747-48. Plaintiff is required to demonstrate as to the employer's reason for discharge such "weaknesses, implausibilities, incoherencies or contradictions" that a "reasonable fact-finder could ra-

tionally find them 'unworthy of credence';" *Fuentes v. Perskie,* 32 F.3d 759, 765 (C.A. 3 1994).

In the instant case, plaintiff admits to alcoholism in his pleadings, yet asserts his subjective belief in his competency to fulfill his job obligations in a safety-sensitive plant and puts forth his subjective belief that he has been discriminated against because another employee (in a different job with a long-term, not short-term, employment whose offenses were minor and not related to danger to self or others) was retained, while he was discharged. This is not evidence that the reason for discharge was weak, implausible, incoherent or contradictory. Indeed, the reasons were believable, coherent and uncontradicted violation of a last-chance agreement by reporting to work in an unfit condition.

Nor has plaintiff adduced any evidence of a proscribed animus on the part of the decision-makers who determined he should be discharged. Not a shred of testimony supports a conclusion that plaintiff was terminated because of the motivating factor of racial discrimination on the part of management.

A verdict will be entered for defendants as to the claim for money damages. The request by plaintiff for declaratory and injunctive relief will be denied.

## ORDER

And now, to-wit, March 3, 1997, the court finds in accordance with the opinion entered this day as to the claim for money damages, verdict in favor of USS, a/k/a United States Steel Corporation, a division of USX Corporation, and USX, defendants, and against David Debski, plaintiff. As to the claims for declaratory relief and injunctive relief, verdict in favor of defendants against the plaintiff.